· North Western Mutual Life Insurance Company v. Heimann.

No. 10,377.

NORTH WESTERN MUTUAL LIFE INSURANCE COMPANY v. HEIMANN.

PRACTICE.—*Interrogatories to Jury.*—Answers by the jury to interrogatories, which can be reconciled with the general verdict, do not affect it.

SAME.—If the answer of the jury to an interrogatory be uncertain, the remedy is not by motion to reject it, but to require the jury to make proper answer to it.

SAME.—*Evidence.*—Interrogatories immaterial to the issue, or which call merely for evidence bearing upon a fact in issue, should not be sent to the jury.

SAME.—*Instructions.*—*Error.*—*New Trial.*—No question upon the giving of instructions or modification thereof can be made in the Supreme Court, unless it was presented below as a cause for a new trial.

SAME.—Where the evidence is not in the record, the Supreme Court will not deem instructions erroneous if they would have been correct in any possible state of the evidence.

LIFE INSURANCE.—*Misrepresentation in Applying for Policy.*—An immaterial misstatement of fact as to the health of the applicant, in the application for a life policy, is not a breach of a condition in the policy which declares it void, if such statements be untrue in any material respect.

From the Vanderburgh Circuit Court.

*T. A. Hendricks, A. W. Hendricks, C. Baker, O. B. Hord, A. Baker* and *E. Daniels,* for appellant.

*J. M. Shackleford, A. Gilchrist* and *C. H. Butterfield,* for appellee.

ZOLLARS, J.—As creditor of William H. Fowler, appellee was made the beneficiary in a policy of insurance, issued by appellant, upon the life of said Fowler. After the death of Fowler this action was brought upon that policy. Defence is made by the company upon alleged false answers in the application for the insurance. With the general verdict for appellee, the jury returned answers to interrogatories submitted by appellant.

With other reasons urged for a reversal of the judgment, are a refusal by the trial court to strike out and suppress one

North Western Mutual Life Insurance-Company *v.* Heimann.

of these answers, and the overruling of appellant's motion for judgment, notwithstanding the general verdict.

One of the defences set up and urged below and here is a false statement in the application for the insurance, in relation to the amount of Fowler's indebtedness to appellee.

The application and policy show that appellee was made a beneficiary as the creditor of Fowler. Upon the question of that indebtedness the application contains the following:

"21st. It is also declared that the above named beneficiary has an interest in the life of the person whose life is proposed for insurance, to the full extent of the amount of insurance applied for."

It is further declared in the application that it is the basis of the contract of insurance, that the several answers by the applicant are fair and true, and that any untrue or fraudulent answers, or any suppression of facts in regard to the applicant's health, habits or circumstances, material to the risk, shall vitiate the policy. The policy issued upon the application is for $1,000. It contains a provision that if any of the statements or declarations in the application shall be found to be in any material respect untrue, the policy shall be null and void.

At the request of appellant, the court submitted to the jury a number of interrogatories, three of which, with the answers of the jury thereto, were as follows:

"15th. To what amount was said Heimann the creditor of said Fowler, at the time of making said application? Answer. $581.45.

"16th. Had said Heimann any other interest in the life of said Fowler? Ans. None.

"17th. If he had any interest other than as a creditor, what was that interest? Ans. A verbal obligation for the payment of $300, and interest, for goods obtained by Stone and Fowler from Heimann."

After the jury had been discharged, appellant, by counsel, moved to suppress and reject the last answer, because incon-

sistent with the two preceding, and because it is uncertain and meaningless.

If this answer is open to the objections urged against it, appellant's remedy was to ask the court to refer the interrogatory back to the jury for a more pertinent and specific answer. Not having done so, we think that the trial court was not in error in overruling the motion to reject the answer. *Noble* v. *Enos,* 19 Ind. 72; *Noakes* v. *Morey,* 30 Ind. 103; *McElfresh* v. *Guard,* 32 Ind. 408; *Reeves* v. *Plough,* 41 Ind. 204.

The court had no right to reject the answer, nor disregard it, in passing upon the motion of appellant for judgment upon the interrogatories, notwithstanding the general verdict for appellee.

The answers are not in irreconcilable conflict with each other, nor with the general verdict. The jury evidently understood the interrogatories to require answers, first, as to the amount that Fowler alone was indebted to appellee, and, second, as to the amount of any other indebtedness of whatever kind; and hence they answered that, alone, he was indebted in the sum of $581.45, and with Stone, in the amount of $300 and interest. How much the interest amounted to, the jury did not, nor were they required to answer. For aught that we can know, the interest may have been sufficient to swell the indebtedness up to and beyond the amount of the policy. And so far as shown by the answer, or anything in the record, Fowler was liable for the whole amount of the joint indebtedness with Stone. This might have been because they were partners, or because Stone was insolvent. So far as it affects the contract of insurance, it makes no difference whether the " verbal obligation " was within the statute of frauds or barred by the statute of limitations. The company is not in a position to raise either of these questions. Bliss L. Ins., section 28; *Wills* v. *Ross,* 77 Ind. 1 (40 Am. R. 279); *Cool* v. *Peters, etc., Co.,* 87 Ind. 531.

The general verdict implies a finding by the jury that Fowler was indebted to appellee in the amount stated in the

North Western Mutual Life Insurance Company *v.* Heimann.

policy. The rule is well settled that judgment will be given on answers to interrogatories, only in cases where there is an irreconcilable conflict between them and the general verdict. *Byram* v. *Galbraith,* 75 Ind. 134, and cases cited; *Higgins* v. *Kendall,* 73 Ind. 522; *Louthain* v. *Miller,* 85 Ind. 161.

It is also settled that where the evidence is not in the record, as in this case, every reasonable presumption will be indulged in favor of the general verdict. *Salander* v. *Lockwood,* 66 Ind. 285. As there is no such irreconcilable conflict between the answers to the interrogatories and the general verdict in the case before us, we must hold that the court below did not err in overruling appellant's motion for judgment.

It is contended on behalf of appellant that the trial court erred in refusing to submit to the jury four interrogatories. One of them sought an answer from the jury as to whether or not the policy was issued upon the faith of an application, partly printed and partly in writing, made by appellee and Fowler. We are unable to see what difference it could make whether the application was partially or wholly in writing. The copy of the policy filed with the complaint shows that the policy was issued upon the faith of the application. There seems to have been no controversy about that. The instructions are all based upon that theory. We know of no way, and counsel suggest none, in which an answer to the interrogatory could have affected the general verdict. When such is the case, the refusal to submit an interrogatory is not an available error for the reversal of the judgment. *Pittsburgh, etc., R. R. Co.* v. *Noel,* 77 Ind. 110.

A part of the sixteenth question in the application is as follows: "Are you engaged in any way in the sale of alcoholic liquors?" The answer is: "No; have been, but am not now in any way connected with the sale of liquors."

The application and this answer, with the other answers, were made on the 17th day of April, 1877. One of the defences relied upon by appellant is that this answer was false. Of the interrogatories submitted by it upon this question, the

court submitted five and rejected three. To the five thus submitted the jury responded that the answer by Fowler was true. This is the direct answer to one of them, and the substance of the answers to the others. In the interrogatories which the court refused to submit to the jury appellant sought answers as to whether or not Fowler had suspended the sale of liquors, and for what the saloon-room was used during such suspension; as to whether or not, between the 26th day of March and the 17th day of April, 1877, liquors were sold in the saloon-room by Fowler or others.

The material fact in issue is whether on the 17th day of April, 1877, Fowler had ceased to be engaged in the sale of liquors. That question was put to the jury and answered. The interrogatories rejected did not embody or require answers as to that fact, but rather as to evidence bearing upon it. The statute provides that the jury may be required to find specially upon particular questions of fact, but it does not provide that evidence of such fact may be brought out by such interrogatories. Section 546, R. S. 1881; *Mutual Benefit Life Ins. Co.* v. *Cannon*, 48 Ind. 264. As we have said, the evidence is not in the record. For anything that we can know the trial court may have declined to submit the interrogatories because there was no evidence upon the points covered by them.

Four of the instructions submitted by appellant were not given as asked, but with modifications. To present any question here, upon this action of the court, it should have been assigned as a cause for a new trial, which was not done. Assigning it as error is not sufficient, and presents no question for decision. *Hampson* v. *Fall*, 64 Ind. 382; *Eckleman* v. *Miller*, 57 Ind. 88; *Freeze* v. *DePuy*, 57 Ind. 188; *Reagan* v. *Hadley*, 57 Ind. 509; *Hallock* v. *Iglehart*, 30 Ind. 327.

The giving of the second and third instructions asked by appellee was assigned as a cause for a new trial, and is insisted upon here as error. As counsel have, we may treat the two as constituting the second instruction.

In the first portion, the jury was instructed that if the answers or statements in the application were incorrect or untrue, in an immaterial respect only, the policy would not be thereby avoided. In the latter portion, the jury were instructed that it was their right and duty to determine from the evidence as to whether or not, at the time of the application, Fowler had any symptoms of or any of the diseases mentioned in the application; that before a temporary ailment can be called a disease, it must be such as to indicate a vice in the constitution, or be so serious as to have some bearing upon the general health; that if prior to the application, Fowler had some sickness, or some symptoms of sickness, but said sickness was merely a temporary disorder, had no bearing upon his general health, and did not materially affect the truth of the answers or statements in the application, the policy would not, on that account, be avoided. In the application, questions were propounded as to whether or not Fowler ever had any of the different diseases named, or any symptoms of them. To these questions negative answers were made. The condition of the policy is that if any of the statements or declarations in the application shall be found in *any material respect* untrue, then and in every such case, the policy shall be void.

It is very plain that under this provision in the policy the answers in the application are not required to be true in all respects. There may be a variation from the truth, if not in "*any material respect.*" If any of the answers were untrue, and by reason thereof the company was induced to assume a greater hazard, it may be said that the variation was material. These were questions for the jury, and were properly left with them for decision, with the statement, in the language of the contract, that the policy would be avoided, if the answers in the application were untrue in "any material respect." The latter part of the instruction lays down the rule for the guidance of the jury as stated in the case of *Cushman* v. *U. S. Life Ins. Co.*, 70 N. Y. 72.

North Western Mutual Life Insurance Company v. Heimann.

The doctrine of that case commends itself to us as the reasonable one. In that case, the answer "no" was made to the question whether the applicant had ever had any disease of the liver. It was in proof that he had had congestion of the liver on one or two occasions, but speedily recovered. In speaking of this the court said: "By the questions inserted in the application, the defendant was seeking for information bearing upon the risk which it was to take, the probable duration of the life to be insured. It was not seeking for information as to merely temporary disorders or functional disturbances, having no bearing upon general health or continuance of life. Colds are generally accompanied with more or less congestion of the lungs, and yet in such a case there is no disease of the lungs which an applicant for insurance would be bound to state. So, most, if not all persons, will have at times congestion of the liver, causing slight functional derangements and temporary illness, yet in the contemplation of parties entering into contracts of life insurance, and having regard to general health and the continuance of life, it may fairly be said that in such cases there is no disease of the liver. In construing a policy of life insurance it must be generally true that, before any temporary ailment can be called a disease, it must be such as to indicate a vice in the constitution, or be so serious as to have some bearing upon general health and the continuance of life, or such as according to common understanding would be called a disease ; and such has been the opinion of text-writers and judges."

In the absence of the evidence, we have no information as to whether or not Fowler was shown to have had any sickness, temporary ailment or disorder. If nothing of the kind was shown, there was no possibility of the instruction harming appellant. It may be that Fowler was shown to have had a slight cold only, or some slight, temporary indisposition, entirely different from anything named in the application, and that the instruction was given with reference to these. It is well settled that when the evidence is not in the

record, an instruction will not be pronounced erroneous, if under any supposable state of the evidence it could have been correctly given. *Hunt* v. *Elliott*, 80 Ind. 245 (41 Am. R. 794).

Judgment affirmed, with costs.

Filed Feb. 14, 1884.