Filed Oct. 4, 1892.

———————◆———————

No. 14,943.

The British-American Assurance Company, of Toronto, *v.* Wilson et al.

Interrogatories.—*Dividing Interrogatory.*—*Party Complaining Must Affirmatively Show that he is Injured Thereby.*—Where the claim is made that the court erred in dividing an interrogatory asked by a party, and in submitting it to the jury as two interrogatories, it must affirmatively appear from the record that the party complaining of this action of the court was thereby injured.

The British-American Assurance Company, of Toronto, *v.* Wilson *et al.*

SAME.—*Antagonism, Degree of, How Must Appear.*—The antagonism between the special findings and the general verdict must be apparent on the face of the record beyond the possibility of being removed by any evidence legitimately admissible under the issues.

SAME.—*Evidence Can Not be Considered.*—In passing upon the antagonism between the general verdict and the interrogatories, the evidence can not be considered.

SAME.—*Presumption in Aid of.*—No presumption in aid of the answers to interrogatories will be indulged in by the court on a motion for judgment on such interrogatories, all reasonable presumptions and intendments being against them.

MARINE INSURANCE.—*General Average, When Allowed.*—To constitute a case for general average under a marine insurance policy, it must be shown that the ship and cargo were placed in a common imminent peril, that there was a voluntary sacrifice of property to avert that peril, and that by that sacrifice the safety of the other property was presently and successfully attained.

SAME.—*Facts Sufficient to Show case for General Average.-- Overturning General Verdict by Interrogatories.*—Therefore, an answer-of the jury to an interrogatory showing only that there was a sacrifice of property to relieve the property saved from a danger of navigation, and for the best interest of the property at risk, is not sufficient to overturn a general verdict for the insured.

From the LaPorte Circuit Court.

*R. Rae, J. A. Thornton* and *J. H. Orr*, for appellant.

*M. Nye* and *J. F. Gallaher*, for appellees.

MILLER, J.—This was an action by the appellees against the appellant upon a policy of marine insurance.

The amended complaint is in substance as follows:

That the plaintiffs, Cook and Wilson, complain that on the 22d of June, 1888, the defendants, a corporation doing business under the laws of Indiana, executed to the plaintiffs its policy of insurance, a copy of which is attached to the complaint, and in consideration of the premium paid, and by the contract proposition made on said date, of which a copy is herewith attached, the defendant agreed to insure Cook and Wilson against any and all loss which they might sustain, by means of the perils and misfortunes that might come to the hurt, detri-

ment or damage of all kinds of lumber and timber, goods, wares and merchandise, by reason of the shipment and during the voyage, to any of the vessels, or on any of the lakes, from the point of shipment to the point of destination from said 22d June, 1888, to the following 30th of November; that on or about the 31st of September, 1888, the plaintiffs loaded on board the barge Rice, at the port of Deer Park, Lake Superior, bound for and consigned to Michigan City, a cargo of lumber, the property of the plaintiffs, consisting of 575,800 feet, of the value of $6,716.60, which cargo was covered by the policy of insurance of defendant.

On the 22d of September, the barge R. N. Rice, with cargo on board, left port of Deer Park in tow of the propeller Huron City, and bound for Michigan City, and while on said voyage the barge, by reason of the storms, was, by the perils and damages of the lakes and force of the waves, wrecked and lost, together with her cargo, of the value aforesaid; that due notice was forthwith communicated from plaintiffs to defendant, and thereupon the cargo was duly abandoned to the defendant by proper notice, and that the abandonment was accepted by defendant; that afterwards protest and proofs of loss according to terms of policy were made and forwarded to defendant, together with a copy of the invoice and tally-sheet of lumber, and made part of the proofs of loss. Plaintiffs aver that they performed all the provisions of the policy required by them to be performed, and the defendant became liable to them for the value of said cargo, to wit: $6,717.60, but that the defendant wrongfully refuses to pay, and demands judgment for $7,500.

A demurrer to the complaint was filed and overruled, and this ruling is assigned as error, but no argument being made in support of this assignment, it is to be taken as having been waived. Elliott's App. Procedure, section 444.

The defendant answered, in substance, as follows:

*First.* Denies each and every allegation of the complaint.

*Second.* The defendant further answering says that when the cargo was taken on board on September 22, 1888, the Rice was not tight, staunch and strong enough to resist the ordinary perils of the lakes, and other perils covered by the policy of insurance in this case, and that the vessel was not at the time of shipment, nor at the time of loss of cargo, seaworthy, or lakeworthy, or fit to undertake and perform her intended voyage, and that she continued unseaworthy before, from and at said shipment of said cargo on board of her until the cargo was lost. The cargo was lost by reason of unseaworthiness, and not otherwise.

*Third.* That after the Rice had taken in and aboard said cargo mentioned in said complaint, she started on her intended voyage, etc., and was on the 26th day of September, 1888, at the port of Manistee, a place of safety, the master well knew that the said vessel was unseaworthy, and not fit to stand the ordinary perils of the lakes.

The port of Manistee was a port of repair, and it there became and was the duty of the master and others, or either of them, to repair said vessel and put her in a seaworthy condition, and that he neglected said duty, and on the morning of September 29, 1888, resumed the voyage in an unseaworthy and unsafe condition, and that the vessel and her cargo was thereby lost, and not otherwise.

*Fourth.* That the Rice, with said cargo on board on said voyage, in tow of the Huron City, a water craft owned by plaintiffs at the time said cargo was lost on Lake Michigan, September 30, 1888, under contract of towage to tow the Rice with cargo on board, whereof the plaintiffs were owners, and defendant underwriter; and that by terms of the contract of towage, it is provided that the officer of the Huron City should skilfully and carefully

tow the Rice with cargo on board from. Deer Park to Michigan City, the dangers of navigation alone excepted.

By the terms of the contract it became the duty of the master of the Huron City to carefully and skilfully tow the Rice and so manage the tow that the cargo might not be cast adrift or in any manner unnecessarily exposed to any peril which the master of the Huron City, in the conduct and management of his tow by due care and skill could prevent. But nevertheless the master was regardless of his duty in this respect, and did in violation of his duty cast adrift the Rice, and caused his vessel to abandon her, etc., and said cargo was by reason of said want of skill and care on the part of the officers lost, and not otherwise.

A reply of general denial put the case at issue.

The cause was tried by jury and a general verdict for the plaintiff for the full amount of the loss was returned, together with answers to the following special interrogatories submitted by the court:

"1. Was the barge R. N. Rice seaworthy when she commenced her voyage from Deer Park on the 22d of September, 1888, with plaintiff's cargo on board? A. Yes.

"2. Was the barge R. N. Rice unseaworthy when she put into Manistee on the 26th of September, 1888, and if so, could she have been made seaworthy at Manistee? A. No.

"3. Did the Rice leave the port of Manistee in an unseaworthy condition? A. No.

"4. Did the officer of the steamer Huron City act negligently in cutting the barge Rice adrift in Lake Michigan? A. No.

"And if not, did they cut her adrift to relieve the Huron City and the tow from a danger of navigation, and for the best interest of the property at risk? A. Yes."

The record, both in the journal entries and bill of ex-

ceptions, informs us that after the jury returned their verdict and answer to interrogatories the defendant moved the court for a judgment, notwithstanding the verdict, which motion was overruled and excepted to, and, thereupon, the jury was required to retire to their room and again answer interrogatory four, to which the appellants excepted, and the jury again returned into court with the answer revised.

The action of the court in directing the jury to retire to their room and revise their answer to this interrogatory is complained of. We could only interfere with the discretion necessarily lodged in the trial court where it appears from the record that the complaining party has been injured by the action of the court. We are nowhere informed what changes were made by the jury in their answer to the interrogatory, and can not, therefore, ascertain whether the court abused its discretion or the appellant was injured by the action of the court. Assuming that the change consisted in dividing the fourth interrogatory into two parts and answering each separately, we can not say that the action of the court was not in furtherance of justice.

It is earnestly contended by appellant's counsel that the court erred in overruling their motion for judgment in favor of the defendant, notwithstanding the general verdict.

The special findings of the jury override the general verdict only when both can not stand; and this antagonism must be apparent upon the face of the record, beyond the possibility of being removed by any evidence legitimately admissible under the issues. *Lockwood* v. *Rose*, 125 Ind. 588; *Matchett* v. *Cincinnati, etc., R. W. Co., post*, p. 334. In reviewing the ruling upon the motion for judgment on the measure to interrogatories, we can not look to the evidence.

*Pennsylvania Co.* v. *Smith,* 98 Ind. 42; *Cox* v. *Ratcliffe,* 105 Ind. 374.

We are, therefore, to determine whether there is such repugnancy between the general and special verdicts that it could not have been removed by evidence, admissible under the issues.

The contention of the appellant is, that the answer to the latter part of the fourth interrogatory, to the effect that the R. N. Rice was cut adrift " to relieve the Huron City and the tow from a danger of navigation and for the best interest of the property at risk," shows that the insurer, if liable at all, is only liable for a general average loss, and there having been no adjustment as provided in the policy, the action was prematurely brought.

We are of the opinion that the facts stated in the answer to the interrogatory are not sufficient to bring the case within the rule contended for by appellant's counsel.

In *Barnard* v. *Adams,* 51 U. S. 270, 302, the court says that:

" In order to constitute a case for general average, three things must concur:

" *First.* A common danger; a danger in which ship, cargo, and crew all participate; a danger imminent and apparently ' inevitable,' except by voluntarily incurring a loss of a portion of the whole to save the remainder.

" *Second.* There must be a voluntary jettison, *jactus,* or casting away, of some portion of the joint concern for the purpose of avoiding this imminent peril, *pericula imminentis evitandi causa,* or, in other words, a transfer of the peril from the whole to a particular portion of the whole.

" *Third.* This attempt to avoid the imminent common peril must be successful."

In *Sonsmith* v. *Donaldson,* 21 Fed. Rep. 671, the court cites from the opinion of Mr. Justice Story in *Columbian Ins. Co.* v. *Ashby,* 13 Pet. 331, the following:

" *First.* That the ship and cargo should be placed in a

common imminent peril; *secondly*, that there should be a voluntary sacrifice of property to avert that peril; and, *thirdly*, that by that sacrifice the safety of the other property should be presently and successfully attained."

In 2 Arnould Ins. 885, the law is thus stated:

" It is an undoubted requisite of a general average loss that it should have been incurred under the pressure of a real and imminent danger. The sacrifice may have been *bona fide* made with a view to the general safety; but it can give no claim to contribution unless that safety shall appear to have been really endangered. I am not bound to make good to another a loss he has intentionally incurred, with a view to my benefit, if such loss was one which a man of ordinary firmness and sound judgment would not, under the circumstances, have submitted to. *The sacrifice must have been made under the urgent pressure of some real and immediately impending danger, and must have been resorted to as the sole means of escaping destruction.*"

The answer to the interrogatory, especially when taken against the general verdict, that the Rice was cut adrift " to relieve the Huron City and the tow from a danger of navigation and for the best interest of the property at risk," comes short of showing that the sacrifice was made to avert a common danger, immediately impending, and as the sole means of averting the destruction of ship, tow, cargo and crew.

We can indulge in no presumption in aid of the answers to interrogatories, all reasonable presumptions and intendments being against them. *Baltimore, etc., R. R. Co.* v. *Rowan,* 104 Ind. 88 ; *Redelsheimer* v. *Miller,* 107 Ind. 485 ; *Rice* v. *City of Evansville,* 108 Ind. 7 ; *Ft. Wayne, etc., R. W. Co.* v. *Beyerle,* 110 Ind. 100; *Cincinnati, etc., R. R. Co.* v. *Clifford,* 113 Ind. 460.

The answer in the preceding portion of the interrogatory, that the officer of the Huron City did not " act neg-

ligently, in cutting the Rice adrift, does not aid the position of the appellant, the allegation that the act was not negligent being a mere conclusion of the jury which they were not authorized to find by special verdict. *Conner* v. *Citizens', etc., R. W. Co.,* 105 Ind. 62; *Louisville, etc., R. W. Co.* v. *Balch,* 105 Ind. 93 ; *Chicago, etc., R. W. Co.* v. *Burger,* 124 Ind. 275.

If the answer to the interrogatory was not defective as indicated, it would not control the general verdict returned for the plaintiff, for an additional reason. The complaint charges that the cargo insured was abandoned by the insured to the underwriter, and that the abandonment was accepted. The ownership of the Huron City is not found in any of the special findings. We are therefore authorized, in aid of the general verdict, to presume that there was evidence sufficient to justify the jury in finding that the cargo was abandoned to the underwriter and the abandonment duly accepted, and, if that be important, that the Huron City was not the property of the insured. If such were the facts in the case, it was the duty of the underwriter to pay, as upon a total loss, and sue the owner Huron City for contribution. 2 Pars. Marine Ins. 289, and cases cited.

The answers to the other interrogatories are not claimed to be, in any manner, inconsistent with the general verdict.

In our opinion the court did not err in overruling the motion of the defendant for a judgment on the answers to interrogatories, notwithstanding the general verdict.

The action of the court in overruling the defendant's motion for a new trial is also assigned as error.

The only cause for a new trial, not embraced within the discussion in the foregoing opinion, is that the verdict of the jury is not sustained by sufficient evidence.

In support of this assignment counsel have submitted elaborate briefs devoted to a discussion of the evidence,

and questions of navigation and marine insurance. The view that we take of the effect of the verdict of the jury renders it unnecessary for us to enter into an examination of the question of law embraced in the arguments of counsel. As we have said, the answers to interrogatories, other than a portion of the fourth, are in complete harmony with, and in aid of, the general verdict. We may, therefore, in the consideration of the remaining questions involved, look to the general verdict alone, disregarding entirely the interrogatories and their answers.

By their general verdict the jury determined all the issues joined between the parties litigant in favor of the plaintiffs. Having been advised by the evidence as to the facts, and the instructions of the court as to the law, their verdict is to be deemed a determination of the facts, according to the rules of law embraced within the instructions; as well as all mixed questions of law and fact.

The instructions of the court were unusually full and accurate and quite favorable to the views of the law as set forth and the briefs of appellant's counsel. We have studied the evidence with care and are of the opinion that there is evidence, in support of the verdict, upon every material issue involved. We express no opinion as to its weight, that is not within our province. When we have determined that there is some evidence in support of the verdict our duty is at an end.

We deem it not improper to say, in view of the discussion relative to casting the Rice adrift, that the evidence does not show that the Rice was cast away to relieve the Huron City, or its cargo, or crew, from an impending danger, but in order to enable it, with safety, to take off the crew of the Rice, who were in deadly peril.

In our opinion the court did not err in overruling the motion for a new trial.

Judgment affirmed.

Filed Oct. 4. 1892.